UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                          Plaintiff,

                                                                           <u>DECISION AND ORDER</u>

                                                                           11-CR-6160L

                       v.

FIRKON JAMES,

                                          Defendant.
_____

Firkon James ("James" or "defendant") has filed a motion (Dkt. #96) that he has styled as a "Motion to Modify Pursuant to 28 U.S.C. § 1651(a) For Constitutional Violation (Not a 2255)." On the same day that he filed that motion, James filed another motion (Dkt. #95), which he describes as a "Motion to Withdraw Plea Agreement Applicable to Rule 11."

The Government has responded by filing a motion to dismiss (Dkt. #98). James has filed a response (Dkt. #101) to the Government's motion to dismiss. For the reasons that follow, James's motion is denied, and the Government's cross-motion to dismiss is granted.

## PROCEDURAL HISTORY

The Government's motion to dismiss accurately sets forth the relevant procedural background in this case, including the remarkable number of attorneys--five--who were either appointed to represent James or retained by him, and who eventually asked to be relieved as counsel because of conflicts caused by James. When James eventually pleaded guilty to the charges, he was represented by his sixth lawyer, Bryan Oathout.

The procedural history is fairly straightforward. On September 17, 2012, defendant (then represented by his third attorney, Avik Ganguly) pleaded guilty pursuant to a plea agreement, which contained an agreed-upon sentence of 300 months imprisonment pursuant to FED. R. CRIM. P. 11(c)(1)(C). James pleaded guilty to Count 1 of the indictment, which charged conspiracy to distribute 280 grams or more of cocaine base. That count contained a mandatory minimum sentence of 240 months to life imprisonment.

In the factual basis contained in the plea agreement, James admitted engaging in a narcotics conspiracy from January 2008 to September 2010, and that the conspiracy involved at least 280 grams of cocaine base. James also admitted manufacturing the cocaine base, packaging it, and directly distributing the drugs to others. James also acknowledged having possessed a firearm during the conspiracy.

In addition to the drug quantity, the sentence was affected by James's prior drug felony conviction. Prior to entry of the plea, the Government filed an information pursuant to 21 U.S.C. § 851 alleging that conviction.

There was an extensive colloquy pursuant to Rule 11 at the time of the anticipated plea, and the Government has attached the transcript of that proceeding to its motion to dismiss. (Dkt.

#98-2.)  The first sixteen pages of that transcript reflect both the choices facing James and his reluctance to follow the advice of counsel and take advantage of the plea agreement, which spared him possible life imprisonment without parole should he be convicted after trial.

It is apparent that plea offers had been extended to James several months, if not a year, prior to that plea proceeding.  Eventually, a trial date was set with James and his then-attorney, Ganguly, but the matter was rescheduled one last time to see if James wanted to take the plea offer of 300 months imprisonment, pursuant to Rule 11(c)(1)(C).  Such a sentence--though considerably better than what James was facing, if he went to trial--was obviously not insubstantial, and the Court spent quite some time explaining the realities of the situation to James.

Part of that discussion related to James's multiple prior drug convictions.  If he pleaded guilty, the Government would agree to rely on only one of his prior convictions, with respect to sentencing.  But if James went to trial and was convicted, the Government would file an information relating to all of James's prior drug convictions, which would have subjected him to a possible mandatory life sentence.  *See* Dkt. #98-2 at 7.

All of this was set out for James in the course of the plea colloquy.  James's options were presented to him, and the plea proceeding was adjourned for about five hours to give James and his attorney a further opportunity to decide what James wanted to do.  *Id.* at 16.  When the parties reconvened, the Court was advised that James did want to accept the plea offer, and James confirmed that on the record. *Id.* at 17.  There followed an extensive discussion about the plea agreement, James's understanding of it, and the fact that the plea was an 11(c)(1)(C) plea with a sentence of 300 months imprisonment.

3

Once again, the prosecutor advised the Court of James's multiple prior drug convictions, and the concomitant possibility of a mandatory life sentence. James freely admitted to the Court that one of the reasons he was taking the plea offer was that he knew that he would face mandatory life imprisonment if he were to be convicted after trial. *Id.* at 22.

In addition to several other provisions that were discussed, the Court specifically drew James's attention to Section VI, on page 10 of the plea agreement, which provided for his waiver of the right to file either a direct appeal, a habeas corpus petition, or a § 2255 motion. James acknowledged that he was aware of and understood those provisions. *Id.* at 30-31. James was also advised that any motions that he had filed or could have filed would be waived and relinquished based on his guilty plea. *Id.* at 31.

The Court also referenced James's issues with prior counsel, and inquired as to whether James had any issues or problems with his then-attorney, Ganguly. James stated on the record that he had no such problems or concerns. *Id.* at 38.

Subsequent to entry of the guilty plea, James made filings, challenged the effectiveness of his prior lawyers, and obtained new counsel, Richard Borzouye and James Hartt, his fourth and fifth defense counsel (Hartt was local counsel for Borzouye, who is from New York City). *See* Dkt. ## 51, 52. Shortly thereafter, however, those lawyers also sought to be relieved because of James's insistence on filing motions that the lawyers deemed unwarranted. *See* Dkt. # 63. The Court granted that request on March 22, 2013. (Dkt. #68.)

At a court proceeding on June 20, 2013 (Dkt. #74), the Court gave James additional time to formally move to withdraw his guilty plea. The Court once again pointed out the risks to James if the motion were granted and if he were to proceed to trial and be convicted.

4

No motion or application was made by James to withdraw the plea, and the matter proceeded to sentencing on August 29, 2013. At that time, the Court imposed the agreed-upon sentence of 300 months imprisonment, 10 years of supervised release, a $500 fine and a $100 special assessment.

James did file a notice of appeal from the sentence and judgment, but later moved to withdraw the appeal before the Second Circuit. That motion was granted on or about June 9, 2014.

## MERITS

The Government has moved to dismiss James's § 1651(a) motion on the ground that relief under § 1651(a) may not be pursued if there are other specific statutory vehicles for seeking relief. I agree with the Government and, therefore, grant the Government's motion to dismiss.

Section 1651, also known as the All Writs Act, "is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *United States v. Denedo,* 556 U.S. 904, 923 (2009) (quoting *Carlisle v. United States*, 517 U.S. 416, 429 (1996)).

The All Writs Act is not available to James because the relief he seeks is covered by a statute, 28 U.S.C. § 2255. *See Pipola v. United States,* 430 Fed.Appx. 31, 32 (2d Cir. 2011) (writ under § 1651 was not an available remedy, because the relief petitioner sought was covered by § 2255(a)). The fact that James waived his right to proceed under § 2255 does not change the

result.  One who waives proceeding under § 2255 may not avoid the consequences of that waiver by seeking the same remedy under § 1651(a).  Simply changing the nomenclature of the motion cannot be used to end-run James's clear waiver of his right to file a direct appeal or a proceeding for collateral relief, including a motion under § 2255.  *See Green v. United States*, No. 10cv149, 2010 WL 3283393, at *3 (M.D.Ala. July 26, 2010) ("the fact that Green waived his right to file a § 2255 motion when pleading guilty does not render the § 2255 remedy unavailable such that he may instead resort to [§ 1651] in order to circumvent the waiver provision in his plea agreement or, for that matter, the procedural restrictions on filing § 2255 motions").

James also moved, contemporaneously with his § 1651(a) motion, to withdraw his plea agreement (Dkt. #95).  James asked this Court to grant the motion based on the "interest of justice."  There is no basis here for relief on that ground.  On the contrary, the Court spent a significant amount of time in numerous court appearances explaining James's options to him.  Evidently, James ultimately recognized that the plea agreement was in his best interest, took the plea offer, and was sentenced accordingly.

James was given an opportunity to seek withdrawal of his plea prior to sentencing, which he chose not to do.  He was advised repeatedly that should the motion to withdraw be granted, he would be facing trial, with the possibility of life imprisonment if he were convicted at trial.  The fact that James declined to formally move to withdraw the plea prior to sentencing is telling, and indicates that his present request presents little more than a case of "buyer's remorse."

James now claims, in conclusory fashion, that the plea was unknowing and involuntary.  Even a cursory reading of the transcripts of the plea proceeding, sentencing and the other court proceedings that occurred both prior and subsequent to the entry of the plea belie James's

assertions. James contends, for instance, that he was "not informed or aware" of the terms relating to the waiver of his right to appeal. The plea agreement itself was clear in that regard, however, and the Court fully explained these matters to James, who stated on the record that he understood them.

James's remaining arguments require little comment. He appears to contend that his Sixth Amendment rights were somehow violated in light of *Alleyne v. United States,* __ U.S. __, 133 S. Ct. 2151 (2013). In *Alleyne,* the Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an element of the crime, not a mere "sentencing factor."

The facts and holding of *Alleyne* have no bearing here. James pleaded guilty, admitted the relevant drug quantity, and admitted and acknowledged that he had a prior conviction, as stated in the information filed by the Government pursuant to 21 U.S.C. § 851. *See United States v. Wimberly,* 529 Fed.Appx. 525, 526 (6th Cir. 2013) ("the holding of *Alleyne* is irrelevant to this case because Wimberly entered a guilty plea and specifically admitted discharging a firearm during the credit-union robbery ..., the fact used to support his mandatory minimum sentence"). Furthermore, although James claimed he was "found guilty" pursuant to an information, in fact, he pleaded guilty to Count 1 of the indictment.

To the extent James now alleges ineffective assistance of counsel (presumably relating to attorney Ganguly, who represented him at the plea proceeding), the on-the-record colloquy and other undisputed facts relating to the plea agreement refute any such assertion. The facts are clear that James had problems with every single attorney who represented him, whether appointed or retained. Basically, James simply didn't like the message that his attorneys

7

consistently conveyed to him about the strength of the Government's case and the relative wisdom of accepting the plea offer or proceeding to trial.

As stated, at the time of the plea, because of James's prior difficulties with counsel, the Court specifically questioned him whether he had any issues or problems with Ganguly, and James answered that he had none.  His claim now is not supported by the record at all.

In sum, there was a full and fair discussion at the time of the plea and during other court appearances, about all of the circumstances and effects of a guilty plea, and the risks of proceeding to trial.  James simply balked at his 300-month sentence, and he said as much in his statements to the Court just prior to sentencing.  In essence, his position was that he did not kill anyone, so why should he receive such a lengthy sentence?  What James conveniently neglects to mention is the four prior drug convictions that put him in the circumstance that he faced on the present indictment:  either plead and accept the agreed-upon sentence, or proceed to trial and risk being convicted and facing mandatory life imprisonment.  I have considered that argument, and all the matters raised by James's motions, and for the reasons stated, I find none of them to warrant relief.

## CONCLUSION

Defendant Firkon James's motions to modify pursuant to 28 U.S.C. § 1651(a) (Dkt. #96), and his motion to withdraw his plea agreement (Dkt. #95) are in all respects denied.  The Government's motion to dismiss defendant's motion to modify (Dkt. #98) is granted.

To the extent I have considered James's motion to modify as a motion pursuant to 28 U.S.C. § 2255, I deny a certificate of appealability, because James has not raised a substantial issue as to any constitutional violation.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 3, 2015.